Michael E. Quiat, Esq.
Attorney ID No. 015911985
USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone: 201-342-7100
Fax:    201-342-1810
***Attorneys for Plaintiff, Disabled Individual***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

Disabled Individual[1],

         Plaintiff,

       vs.

UNUM LIFE INSURANCE COMPANY OF
AMERICA,

       Defendant.

_____

Civil Action No.

**COMPLAINT**

     Plaintiff, Disabled Individual, by way of Complaint against the Defendant, alleges as follows:

     1.    Plaintiff is a resident of the State of New Jersey, County of Essex, Township of West Orange, New Jersey 07052.

     2.    Defendant, Unum Life Insurance Company of America (hereinafter referred to as "Defendant" or "Unum") is an insurance company organized and existing under the laws of the

---

[1] Disabled Individual is an anonymous reference to Plaintiff intended to protect Plaintiff's privacy.

United States with a principal place of business in Chattanooga, Tennessee. Upon information and belief, Defendant is registered and licensed to do business in the State of New Jersey.

3.      Jurisdiction and venue are proper in this Court pursuant to 29 U.S.C. §1001 *et seq.*, 28 U.S.C. §1332 *et seq.* and 28 U.S.C. §1392 *et seq.*

## ESSENTIAL FACTS

4.      Plaintiff has been a licensed attorney since 1984.  He is licensed to practice in New York and New Jersey.  He graduated Seton Hall Law School and obtained a Masters Degree in taxation from New York University.  He is also an AV Rated attorney by Martindale Hubbell.

5.      Plaintiff was employed as a contract partner in a law firm ("the Firm")[2], beginning in 1995 specializing in tax law.  His areas of expertise included sophisticated estate planning and qualified retirement plans under the Internal Revenue Code and ERISA.

6.      In addition to his full time tax law practice, Plaintiff had a very active lifestyle. He was an avid skier, tennis player, and swimmer. Ever since his days as an Eagle Scout, he loved the outdoors and enjoyed golfing, hiking, rafting, canoeing, camping and horseback riding.

7.      While employed at the Firm, Plaintiff became eligible to participate and did participate in the firm's Long Term Disability Plan which is underwritten and insured by Unum Life Insurance Company of America under Policy No. 901472 (hereinafter referred to as the "Policy" and attached hereto as **Exhibit A**).

8.      On May 18, 2000, Plaintiff was involved in a serious automobile accident in which he was rear-ended and sustained serious injuries to his neck and back. As a result of this accident, Plaintiff suffered herniated discs, cervical radiculopathy, and nerve damage.  Plaintiff

---

[2] The Firm is an anonymous reference to protect Plaintiff's privacy.

was also subsequently diagnosed with chronic non-malignant pain syndrome, degenerative disc disease, arthritis, and bilateral shoulder injuries, including a labral tear in the left shoulder and an impingement, which required surgical correction, and a tendon tear in the right shoulder and an impingement.  He also developed from the accident chronic muscle spasms and headaches.

9.      Notwithstanding his injuries and severe pain, Plaintiff returned to work fulltime after the accident.

10.      Ultimately, the pain from Plaintiff's injuries was so severe that he underwent a cervical fusion at C5-C6 in May of 2002.  Notably, Plaintiff returned to full time practice within a week of his spine surgery.  Despite the spine surgery, his conditions were progressing, and it became increasingly difficult for him to function at or near his prior level.

11.      Plaintiff continued to aggressively treat his underlying medical conditions, seeking alternative treatments to alleviate his debilitating pain.  In addition to cervical spine fusion surgery and shoulder surgery, he underwent multiple rounds of physical therapy, acupuncture, chiropractic treatments, rolfing, cervical nerve ablation surgery, and scores (more than 150) of painful and dangerous facet, steroidal, epidural and lidocaine injections into his neck and back.  He also considered surgical implantation of a pain pump and spinal stimulators and stem cell treatments.

12.      The most effective treatment for Plaintiff's chronic pain was medication.  He continued to be treated with opioid pain medications under the supervision of Dr. Joseph Valenza, Director of Pain Management at Kessler Institute.

13.      Despite his best efforts, Plaintiff's situation was becoming more and more problematic.  If he resisted taking pain medication, he became distracted and incapacitated by the

3

pain itself.  When he could bear the pain no longer, he would resort to his pain medication, which further impaired his cognitive function and hence his ability to practice.

14.     Plaintiff last worked in a full-time capacity at the Firm on or about December 31, 2011. He subsequently filed for residual disability benefits under the above referenced policy, on April 18, 2013.

15.     On June 30, 2014, Unum accepted full liability on Plaintiff's claim and approved Plaintiff's claim for residual disability benefits.

16.     Throughout 2014 and 2015, Plaintiff's pain continued to worsen and began presenting earlier in the day, requiring Plaintiff to take his pain medication earlier and earlier in the morning. Essentially, he was on pain medication constantly throughout the day, with most of the pain medication being taken during the hours he was expected to be working.  As a result of the severe cognitive side effects from these medications, his ability to provide sophisticated legal services was increasingly and significantly limited. Moreover, without pain medication, Plaintiff's ability to function was profoundly impaired by the pain itself.

17.     Although he had been advised by his doctors to give up the practice of law entirely due to his chronic, progressive medical conditions, he would not do so, and he instead pushed himself even harder to continue.

18.     Due to his progressively deteriorating conditions, his personal lifestyle changed dramatically.  He was forced to give up the active lifestyle he had enjoyed previously, gradually giving up the athletic and outdoor activities which had been a significant part of his life.

19.     As time passed, despite his best efforts, Plaintiff's ability to work on even a minimal, part time basis became progressively problematic.  His sleep patterns were increasingly disrupted, and he suffered sleep deprivation and chronic fatigue as a result.  His pain levels were

4

increasing, and his pain management physician was unwilling to prescribe any greater pain medications.

20.     To compensate for his diminishing capacity, Plaintiff began farming out more and more of his difficult tax work to his partners, retaining the easier repetitive functions for himself. He also reduced and ultimately eliminated marketing, giving up the regular professional seminars which he taught.  He also was unable to stay current in his field, a particularly dangerous result of his diminishing capacity.

21.     In January 2016, Plaintiff was called into a meeting with the Firm's managing partner who explained that Plaintiff's productivity was lacking, he could no longer meet deadlines, and he was disorganized.  He was prone to errors and was not providing work product in a timely manner to his clients.  Plaintiff's impairments were causing problems in the office and potential legal liability for malpractice.  Plaintiff was told that the Firm could no longer afford to subsidize him. As a result of these issues, (i) Plaintiff's compensation was slashed significantly (as confirmed by his W-2 statements and paystubs provided to the Defendant), except for compensation for medical insurance and a few miscellaneous items, and (ii) Plaintiff was told that he could no longer legally bind the Firm.  His support staff was instructed that all of Plaintiff's work had to be reviewed and approved by the Firm's managing partner, before it left the office, and that any new engagements and any new work would have to be approved by the managing partner in advance. He was also told to finish up the retirement plan work in which he was still engaged.

22.     On April 13, 2016, Plaintiff finally accepted the advice of his treating physicians, and gave up the practice of tax law entirely.  He advised Unum, as well as Guardian - his other

disability carrier - that he was no longer able to function even in a part time capacity and that his disability claim should be converted from residual to total disability.

23.     On July 27, 2016, Guardian responded accepting liability for total disability on precisely the same medical evidence submitted by Plaintiff to Unum.

24.     Under the Unum Policy, Plaintiff is considered disabled if, due to "sickness or injury" he is "limited from performing the material and substantial duties" of his "regular occupation". He must also have a "20% or more loss" in his indexed monthly earnings due to the same sickness or injury. (See **Exhibit A**). If Plaintiff suffers a loss of income greater than 80%, he is entitled to the full disability benefit provided by the Policy, even if he continued to practice. At the time Plaintiff advised Unum that he was totally disabled, he had already suffered a loss of income greater than 80%.

## <u>DEFENDANTS' TERMINATION OF LTD BENEFITS</u>

25.     Instead of acknowledging that Plaintiff was now totally disabled, on December 28, 2016, Unum advised Plaintiff that it was terminating his benefits under the Policy, contending that he had "chosen" to stop working and therefore he was no longer entitled to any benefits.   Unum further claimed there was a lack of current neurocognitive evidence to demonstrate Plaintiff's continuing cognitive impairments, although Defendant never asked Plaintiff to attend an Independent Medical Exam.

26.     Thereafter, Plaintiff exercised his rights under the Employee Retirement Income Security Act 29 U.S.C. § 1001 et seq. ("ERISA") and administratively appealed the wrongful termination of his benefits.

27.     On June 23, 2017 the Plaintiff filed a formal administrative appeal of the termination of his long term disability benefits.

28.     As part of this appeal, Plaintiff submitted the certification of the Firm's managing partner, who explained that Plaintiff did not "choose" to stop working; rather he was compelled to do so by medical necessity, as he was no longer able to be a competent and productive attorney in the Firm, and his impairment was potentially putting clients of the Firm in legal jeopardy.

29.     Plaintiff also submitted a report from Dr. Kenneth Freundlich, who had performed a neuropsychological evaluation of Plaintiff on June 5 and 12, 2017. Dr. Freundlich had previously evaluated the Plaintiff in 2013. Plaintiff's 2017 test results were consistent with the results from 2013, and reflected that he continued to be profoundly impaired cognitively. According to Dr. Freundlich and Plaintiff's treating physicians, Plaintiff is totally disabled from the practice of tax law.

30.     During the appeal review process, Plaintiff also submitted evidence from Gary L. Pinckney, an expert on professional liability insurance for lawyers, which explained that no professional liability carrier in New Jersey would agree to insure Plaintiff, given his current medical treatment status.

31.     Notwithstanding all of the evidence submitted by the Plaintiff in support of his claim, Unum denied Plaintiff's administrative appeal on September 21, 2017. At no time did Unum ever conduct an IME.

## AS AND FOR A FIRST CAUSE OF ACTION

32.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 32, as if fully set forth again herein.

33.     Plaintiff is totally disabled pursuant to the terms and provisions of the Policy and as such is entitled to the disability benefits provided thereunder.

34.     Defendant's decision on December 28, 2016 terminating Plaintiff's benefits was arbitrary and capricious and was not based on substantial evidence. Plaintiff was also deprived of a full and fair review when he administratively appealed the termination of benefits.

35.     Moreover, Defendant is acting under a clear conflict of interest within the meaning of _Metropolitan Life Insurance Company v. Glenn_, 128 S. Ct. 2343 (2008), which conflict has poisoned its decision-making in this case, to Plaintiff's great prejudice.

36.     By virtue of the foregoing, the Defendant has breached the terms of the Policy and has violated the requirements of the Employee Retirement Income Security Act, 29 U.S.C. § 1132 (a)(1)(B), § 502(a)(1)(B) and applicable regulations thereunder.

## AS AND FOR A SECOND CAUSE OF ACTION
### (In Addition and In The Alternative)

37.     Plaintiff repeats and re-alleges each and every allegation set forth above in Paragraphs 1 through 37 as if fully set forth again herein.

38.     The Defendant placed its own interests over that of Plaintiff, when the Defendant terminated Plaintiff's benefits under the Policy on December 28, 2016, which action constituted a breach of its fiduciary duties owed to Plaintiff under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) and applicable regulations thereunder.

39.     Among the fiduciary duties breached by Defendant are (i) failing to properly investigate Plaintiff's claim before termination of benefits; (ii) failing to consider Plaintiff's own undisputed statements in support of his claim; (iii) disregarding the opinions of Plaintiff's treating providers; (iv) failing to consider the corroborating evidence provided by the Firm's managing partner; (v) failing to consider the corroborating evidence provided to Defendant which proved Plaintiff's income had dropped more than 80% at the time he claimed total disability; (vi) failing to

consider that Plaintiff was no longer insurable from a professional liability perspective; (vii) punishing Plaintiff for his good faith efforts to keep working as long as he could; (viii) changing its position on the merits of Plaintiff's claim without any improvement in his underlying medical conditions: and (ix) failing to give proper and objective consideration to the evidence which supported Plaintiff's claim.

40.     By virtue of the Defendant's breach of fiduciary duties, Plaintiff has incurred losses and harm, separate, apart, and in addition to his right to benefits as alleged in the First Cause of Action. Defendant's actions in this regard were wrongful, reckless, malicious, and in bad faith, and reflect broad based systemic claims handling abuse. Accordingly, Plaintiff is entitled to equitable relief in a form to be determined by this Court, which adequately and fairly compensates Plaintiff and deters Defendant from future breaches, upon a full consideration of the facts.

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

(a)     Declaring Plaintiff totally disabled within the meaning of the Defendant's Policy as set forth in **Exhibit A** of the Complaint, retroactive to April 13, 2016 (First Cause of Action);

(b)     Ordering the Defendant to pay and continue paying Plaintiff's benefits for total disability under the terms of the said Policy as alleged in the First Cause of Action, retroactive to the date of wrongful termination;

(c)     Ordering appropriate equitable relief to Plaintiff, in accordance with the Second Cause of Action, as this Court may deem appropriate.

(d)     Awarding to Plaintiff his costs of suit, including reasonable attorney's fees under ERISA pursuant to 29 U.S.C. § 1132(g)(1), 502(g)(1) and applicable regulations thereunder;

(e)     Awarding to Plaintiff interest on all unpaid benefits at the highest rate allowed by law, and waiving any and all premium charges accruing subsequent to April 12, 2016; and

(f)     Granting such further relief as this Court may deem just and proper.

USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone  201-342-7100
Fax     201-342-1810

Dated: March 29, 2018          By:     /s/ Michael E. Quiat
                                        MICHAEL E. QUIAT
                                        Attorney ID No. 015911985
                                        *Attorney for Plaintiff, Disabled Individual*

## CERTIFICATION

I certify that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action.

USCHER QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone  201-342-7100
Fax     201-342-1810

Dated:  March 29, 2018          By:     /s/Michael E. Quiat
                                        MICHAEL E. QUIAT
                                        Atty ID No. 015911985
                                        *Attorney for Plaintiff, Disabled Individual*

10